LOS ANGELES WATERKEEPER
Tatiana K. Gaur (Bar No. 246227)
E-mail: tgaur@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, California 90401
Telephone: (310) 394-6162
Facsimile: (310) 305-7985
(*Additional Counsel for Plaintiff listed on signature page*)

Attorneys for Plaintiff Los Angeles Coastkeeper

William W. Funderburk, Jr. (Bar No. 176244)
Anna L. Le May (Bar No. 258312)
CASTELLON & FUNDERBURK LLP
811 Wilshire Blvd., Suite 1025
Los Angeles, California 90017                    CLOSED
Tel. (213) 623-7515
Fax. (213) 532-3984
Email: wfunderburk@candffirm.com
Email: alemay@candffirm.com

Attorneys for Defendants C & M Metals, Inc. and C & M Monroe Family, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES COASTKEEPER, a non-profit corporation, doing business as SANTA MONICA BAYKEEPER,<br><br>          Plaintiff,<br>     v.<br><br>C & M METALS, INC., a California corporation, GLORY RECYCLING, INC., a California corporation, C & M MONROE FAMILY LLC, a California limited liability company,<br>          Defendants. | Case No.: CV 12-04799 DDP (FMOx)<br><br>**CONSENT DECREE AND ORDER**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)**<br><br>Judge:  Hon. Dean D. Pregerson |

1   **WHEREAS,** Los Angeles Waterkeeper, d.b.a. Santa Monica Baykeeper,[1]

2   (hereinafter "Waterkeeper") is a 501(c)(3) non-profit public benefit corporation

3   organized under the laws of the State of California, with its main office in Santa

4   Monica, California.

5   **WHEREAS,** Waterkeeper is dedicated to the preservation, protection and

6   defense of the rivers, creeks and coastal waters of the Los Angeles County from all

7   sources of pollution and degradation;

8   **WHEREAS,** the C & M Metals facility is located at 1709 East 24th Street,

9   Los Angeles, California ("C & M Facility" or "Facility").

10  **WHEREAS,** the C & M Facility is owned and/or operated by C & M Metals,

11  Inc., a California corporation, and C& M Monroe Family, LLC, a California

12  limited liability company(hereinafter collectively referred to as "Defendants" or "C

13  & M Metals");

14  **WHEREAS**, on March 23, 2012, Waterkeeper sent a sixty (60) day notice

15  letter ("Notice Letter") to Defendants, the United States Environmental Protection

16  Agency ("EPA"), EPA Region IX, the State Water Resources Control Board

17  ("State Board") and the Regional Water Quality Control Board ("Regional

18  Board"), stating its intent to file suit for violations of the Federal Water Pollution

19  Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA").  The

20  Notice Letter alleged violations of the Clean Water Act for Defendants' alleged

21  discharges of pollutants into storm drains and receiving waters, including the

22  Ballona Creek and Estuary and ultimately the Pacific Ocean, in violation of

23

24  [1] Plaintiff Los Angeles Coastkeeper, d.b.a. Santa Monica Baykeeper, officially

25  changed its name to Los Angeles Waterkeeper on July 25, 2012. Los Angeles

26  Coastkeeper and Santa Monica Baykeeper are fictitious business names of Los Angeles Waterkeeper, duly registered with the Los Angeles County Clerk.

27

28

National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water Permit");

**WHEREAS**, on June 1, 2012 Waterkeeper filed a complaint ("Complaint") against Defendants in the United States District Court, Central District of California (Case No.CV-12-04799 DDP (FMOx)), entitled *Los Angeles Coastkeeper, d.b.a. Santa Monica Baykeeper v. C & M Metals, Inc. et al.*;

**WHEREAS**, the Defendants deny all allegations of the Complaint;

**WHEREAS**, Plaintiff and Defendants (collectively referred to herein as the "Settling Parties" or "Parties") agree that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3.      The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.      Waterkeeper has standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of

interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.   OBJECTIVES

6.     It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and to resolve those issues alleged by Waterkeeper in its Complaint. In light of these objectives and as set forth fully below, Defendants agree, *inter alia*, to comply with the provisions of this Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the CWA. Specifically, Receiving Water Limitation C(2) in the Storm Water Permit requires that the C & M Facility "not cause or contribute to the exceedance of an applicable water quality limit." Effluent Limitation B(3) of the Storm Water Permit requires that Best Management Practices ("BMPs") be developed and implemented to achieve Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT"). C & M Metals shall develop and implement BMPs necessary to comply with the Storm Water Permit requirement to achieve compliance with BAT/BCT standards and with the applicable Water Quality Standards.[2]  BMPs must be developed and implemented to prevent discharges or to reduce contamination in storm water discharged from the C & M Facility sufficient to achieve the numeric limits detailed in paragraphs 16 and 17 (if applicable) of

---

[2] Water Quality Standards are the water quality criteria contained in the Water Quality Control Plan: Los Angeles Region, Basin Plan for the Coastal Watersheds of Los Angeles and Ventura Counties ("Basin Plan"), the California Ocean Plan, the National Toxics Rule, the California Toxics Rule, and other state or federally approved surface water quality plans.

1  this Consent Decree.

2  **II.      EFFECTIVE DATE AND TERMINATION**

3          7.      The term "Effective Date," as used in this Consent Decree, shall mean

4  the last day for the United States Department of Justice and the United States

5  Environmental Protection Agency (collectively "Federal Agencies") to comment

6  on the Consent Decree, i.e., the 45th day following the Federal Agencies' receipt

7  of the Consent Decree, or the date on which the Federal Agencies provide notice

8  that they require no further review and the Court enters the final Consent Decree,

9  whichever occurs earlier.

10         8.      At the conclusion of the fifth Wet Season (defined as October 1

11  through May 31, hereinafter "Wet Season"), after the entry of this Consent Decree

12  and no earlier than June 15, 2018, Defendants may submit a written request to

13  terminate this Consent Decree to Waterkeeper. C & M Metals may move the Court

14  to terminate the Consent Decree prior to June 15, 2018 if no numeric limit in Table

15  1 or Table 2 (if infiltration is implemented at the site) is exceeded for nine (9)

16  consecutive wet weather samples beginning with the 2013-2014 Wet Season and

17  there is no ongoing, unresolved dispute regarding Defendants' compliance with the

18  Consent Decree.

19         9.      Upon receipt of the written request to terminate, Waterkeeper may

20  conduct an inspection of the C & M Facility within thirty (30) days and C & M

21  Metals will work with Waterkeeper to schedule and accommodate the inspection,

22  if requested, within the 30-day period. The inspection will be conducted according

23  to the rules applicable to Annual Site Inspections in paragraph 31 below. Unless

24  there is an ongoing, unresolved dispute regarding Defendants' compliance with

25  this Consent Decree, sixty (60) days after written notice was given, Defendants

26  may move the Court to terminate the Consent Decree and Waterkeeper shall not

27  oppose the motion.

28

## III.   COMMITMENTS OF THE PARTIES

###   A.   Industrial Storm Water Pollution Control Measures

10.   To ensure there are no unauthorized non-stormwater discharges, any non-stormwater discharges from the Facility not authorized by the Storm Water Permit shall be considered a breach of this Consent Decree.

11.   Any storm water pollution measures required by this Consent Decree will be implemented in addition to the existing StormwateRx systems[3] operating at the C & M Facility. The StormwateRx systems will be operated and maintained throughout the year and according to a maintenance schedule agreed to by both Waterkeeper's consultant and Defendants' consultant. The maintenance schedule will be agreed upon as part of Defendants' BMP Plan specified in paragraph 13 below. Any disputes over the adequacy of the StormwateRx systems maintenance schedule shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

12.   <u>Compliance Standard.</u>  The storm water pollution control measures required by this Consent Decree shall be designed and operated to manage through infiltration, treatment and/or diversion the storm water runoff generated by the 95th percentile storm event occurring over 24 hours, based on historical rainfall measured at the Downtown USC Campus Rain Gauge (auto rain gauge reference ID 375-USC) from 1980 through 2010, or 1.92 inches ("Compliance Standard"). The storm water pollution control measures agreed to under this Consent Decree shall be operated throughout the entire year. For purposes of this Consent Decree,

---

[3] The facility has a StormwateRx system that consists of a settling tank, Clara Filter, and an Aquip media filter that is located in Area #1 – the west side of the property.  The settling tank, Clara, and Aquip have a storage capacity of approximately 4,000 gallons.

properly documented discharges of storm water and/or storm water pollutants from the C & M Facility in connection with rainfall events that exceed the Compliance Standard are not a violation of this Consent Decree and are not subject to the paragraph 16 requirement to meet Table 1 Surface Water Numeric Limits.

13.   BMP Plan.  Defendants shall develop and submit to Waterkeeper for review and comment a plan for the installation of an infiltration gallery to capture storm water or the installation of other storm water treatment device(s) and BMPs at the C & M Facility, according to the requirements of paragraph 12 ("BMP Plan"). Defendants shall submit the BMP Plan within 60 days of the Effective Date of this Consent Decree.

14.   Waterkeeper will have 30 days to review and comment in writing on the BMP Plan.  Defendants shall have 21 days to accept Waterkeeper's comments and incorporate them into the BMP Plan, or to respond to Waterkeeper's comments in writing, explaining why the comments were not accepted and incorporated. Disputes regarding the adequacy of the BMP Plan shall be subject to the Dispute Resolution provisions in Section IV of this Consent Decree.

15.   The BMP Plan shall be completely implemented and functioning at the Facility no later than October 1, 2013.  Following October 1, 2013, storm water discharges from the Facility occurring as a result of storm events that are equal to or less than the Compliance Standard specified in paragraph 12 above must meet the Surface Water Numeric Limits in Table 1.  In addition, discharges that are treated through an infiltration gallery installed at the C & M Facility must meet the Vadose Zone Numeric Limits in Table 2.

**B.    Numeric Limits**

16.   Numeric Limits for Storm Water Discharges. Contaminants in storm water discharges from the C & M Facility shall not exceed the limits ("Surface Water Numeric Limits") in Table 1. Except as applied to discharges during the

2012-2013, 2013-2014, 2014-2015 and 2015-2016 Wet Seasons, and except as set forth in paragraph 12, the presence of any contaminant in any discharge from the Facility in excess of, or outside the range of, the Numeric Limits in Table 1 is a breach of this Consent Decree.

**Table 1.  Surface Water Numeric Limits**

| Contaminant | Numeric Limit[4]<br>(All but pH expressed as mg/L) |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Copper | 0.013 mg/L* |
| Lead | 0.065 mg/L* |
| Zinc | 0.120 mg/L* |
| Oil and Grease | 15 mg/L |
| Aluminum | 0.75 mg/L |
| Arsenic | 0.340 mg/L* |
| Cadmium | 0.0043 mg/L* |
| Iron | 1.00 mg/L |
| Mercury | 0.0024 mg/L |
| Nickel | 0.470 mg/L* |

---

[4]  Note:  An * next to a Numeric Limit denotes a CTR Limit.  The limits for pH and COD are from the Basin Plan.  Compliance with the Numeric Limits for metals will be based on evaluation of dissolved concentrations only. CTR Limits are expressed as a function of total hardness in the water body based on the equations provided in Federal Register, Vol. 65, No. 97, May 18, 2000, and being hardness dependent will vary with the analyzed total hardness of the water body. The CTR Criterion Maximum levels expressed herein assume a total hardness of 100 mg/L.

| Silver | 0.0034 mg/L* |
| Chemical oxygen demand | 120 mg/L |
| pH | 6.5-8.5 |
| Chromium (III) | 0.550 mg/L* |
| Chromium (VI) | 0.016 mg/L* |

17.     Numeric Limits for Infiltrated Discharges. Contaminants from C & M Facility discharges infiltrated into an infiltration gallery designed according to the requirements of paragraph 12 above shall not exceed the limits ("Vadose Zone Numeric Limits") in Table 2.  Except as applied to discharges during the 2012-2013, 2013-2014, 2014-2015 and 2015-2016 Wet Seasons, the presence of any contaminant in the Facility's vadose zone in excess of, or outside the range of, the Vadose Zone Numeric Limits in Table 2 is a breach of this Consent Decree.

**Table 2. Vadose Zone Numeric Limits**

| **Contaminant** | **MCL** |
|---|---|
| Aluminum | 0.05 to 0.2 mg/L |
| Arsenic | 0.010 mg/L |
| Cadmium | 0.005 mg/L |
| Copper | 1.0 mg/L |
| Iron | 0.3 mg/L |
| Lead | 0.015 mg/L |
| Mercury | 0.002 mg/L |
| Silver | 0.10 mg/L |
| Zinc | 5 mg/L |

18.     Surface Water Action Plan for Table 1 Exceedances. Defendants shall

submit a plan for reducing and/or eliminating the discharge of pollutants ("Surface Water Action Plan") if any sampling during the Wet Season demonstrates that any contaminant in any discharge from the Facility exceeds the applicable limit for any contaminant found in Table 1.  In any year that a Surface Water Action Plan is required, it shall be submitted by July 30 following the Wet Season in which the exceedances giving rise to the obligation to submit a Surface Water Action Plan have occurred.

a.   Surface Water Action Plan Requirements. Each Surface Water Action Plan submitted shall be in writing and shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the Numeric Limit(s), (2) an assessment of the source of each pollutant exceedance, (3) the identification of additional BMPs, which may include treating storm water prior to discharge from the Facility, that will be implemented to achieve compliance with the Numeric Limit(s), and (4) time schedules for implementation of the proposed BMPs.

b.   Surface Water Action Plan Review.  Waterkeeper shall have 30 days upon receipt of Defendants' Surface Water Action Plan to provide Defendants with comments.  Within 30 days from the date Waterkeeper comments on Defendants' Surface Water Action Plan, Defendants shall provide Waterkeeper with a written explanation if Defendants refuse to develop and/or implement any of Waterkeeper's recommended additional BMPs. Any disputes as to the adequacy of the Surface Water Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

c.   If any structural BMPs require any government agency approval, then Defendants shall contact Waterkeeper to request an extension of the deadline, if necessary, to implement the structural BMPs requiring agency approval. Waterkeeper's consent to Defendants' requested extension shall not be unreasonably withheld.

d.   Defendants shall have until October 1 (following the Wet Season in which the exceedances giving rise to the obligation to submit a Surface Water Action Plan occurred) to implement the Surface Water Action Plan. Defendants shall notify Waterkeeper in writing when the Surface Water Action Plan has been implemented.

19.   <u>Groundwater Action Plan for Table 2 Exceedances.</u> If Defendants construct an infiltration basin to meet the Consent Decree requirements, Defendants shall submit a written plan for reducing and/or eliminating the discharge of pollutants in storm water infiltrated at the Facility ("Groundwater Action Plan") when vadose zone sampling during the Wet Season demonstrates that any contaminant specified in Table 2 exceeds the Vadose Zone Numeric Limits.

a.   The Groundwater Action Plan must be submitted to Waterkeeper within thirty (30) days of Defendants' receipt of sampling data showing exceedances of Table 2 Vadose Zone Numeric Limits.

b.   At a minimum the Groundwater Action Plan shall include increased source control to prevent pollutant exposure to storm water.  In addition, the Groundwater Action Plan may include: literature research regarding background concentrations of metals in soil and groundwater; collection and analysis of background soil, pore water, and groundwater samples, additional monitoring of the existing lysimeters; installation and monitoring of deeper lysimeters; installation and monitoring of upgradient/downgradient groundwater wells; vadose zone modeling; additional pretreatment BMPs, or other methods as appropriate to assess or to mitigate the potential for exceedances of MCL in groundwater.

c.   Waterkeeper shall provide comments, if any, to Defendants within 30

days of receipt.  Defendants shall incorporate the Waterkeeper's comments into the Groundwater Action Plan and issue a report within 14 days of receiving Waterkeeper's comments.  If any of Waterkeeper's comments are not utilized, Defendants shall justify in writing why any comment is not being incorporated within 14 days of receiving comments. Any disputes as to the adequacy of the Groundwater Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

    d. If any structural BMPs require any government agency approval, then Defendants shall contact Waterkeeper to request an extension of the deadline, if necessary, to implement the structural BMPs requiring agency approval.  Waterkeeper's consent to Defendants' requested extension shall not be unreasonably withheld.

    e. Defendants shall have until October 1 (following the Wet Season in which the exceedances giving rise to the obligation to submit a Groundwater Action Plan occurred) to implement the Groundwater Action Plan. Defendants shall notify Waterkeeper in writing when the Groundwater Action Plan has been implemented.

**C.    Sampling and Monitoring at the Facility**

20.    <u>Sample Analysis and Sample Frequency</u>.  The Defendants shall collect storm water samples from each discharge location at the Facility from at least five (5) storm events per Wet Season.  The Defendants must sample the Facility's storm water discharge(s) from the first storm event in each Wet Season. The Defendants must continue to sample storm water discharges from each storm event that produces a discharge until a total of five (5) storm events have been sampled. For purposes of this Consent Decree, this includes any storm water

discharge occurring during the Facility's operating hours,[5] or, if storm water is stored onsite prior to discharge, whenever storm water is released outside these hours.  Any failure to sample a discharge from each discharge location at the Facility until five (5) storm events per Wet Season have been sampled shall be documented and submitted to Waterkeeper within five (5) days of the date a sample could have been collected but was not. The Defendants shall analyze samples collected for the constituents identified in Table 1.  Defendants shall use a state certified laboratory to conduct all analysis pursuant to this Consent Decree. The Defendants shall select laboratories and analytical limits such that, at a minimum, the method detection limits are below the Surface Water Numeric Limits in Table 1.

21.     If Defendants install an infiltration gallery according to the requirements of paragraph 12 above, the Defendants shall be required to collect and analyze samples from any and all storm water discharges occurring during any and all storm events that occur during operating hours and that generate runoff from the C & M Facility. Any discharges that occur outside the Facility's operating hours will be monitored using a flow totalizer capable of recording the volume of runoff that occurs.  Failure to monitor and /or sample such storm water discharges will be a violation of this Consent Decree. The Defendants shall analyze samples collected for the constituents identified in Table 1.  Defendants shall use a state certified laboratory to conduct all analysis pursuant to this Consent Decree.  The Defendants shall select laboratories and analytical limits such that, at a minimum, the method detection limits are below the Surface Water Numeric Limits in Table

---

[5] The C & M Facility's operating hours are Monday through Saturday, 8 am –4:30 pm.

1.

22. Defendants shall submit a written report to Waterkeeper at the end of each Wet Season listing all storm events that occurred and resulted in a discharge at the Facility's stormwater outfalls. The report is due on July 30 every year during the term of this Consent Decree and must include all analytical results from storm water samples collected at the C & M Facility.

23. <u>Groundwater Monitoring</u>. If Defendants install an infiltration gallery, the Defendants shall install a suction lysimeter vertically below and within the ponding area of the infiltration gallery at the Facility. Defendants shall collect samples of infiltrating stormwater from the suction lysimeter ("Vadose Zone Samples"). These Vadose Zone Samples shall be collected every time there is a storm event of 0.1 inch for at least four separate storm events each Wet Season and within 24 hours after rainfall ends. The lysimeter samples from the four separate storm events shall be analyzed for the metals (both total recoverable and dissolved) listed in Table 2 above. Defendants shall compare the results of this analysis with the levels of Table 2.

24. <u>Revising the M&RP.</u>  Within thirty (30) days of the Effective Date of this Consent Decree, the Defendants shall revise its M&RP for the Facility to incorporate the requirements of this Consent Decree and the Storm Water Permit, including, if Defendants install an infiltration gallery, the Groundwater Monitoring requirements in paragraph 21 of the Consent Decree. The revised M&RP shall require that the samples taken from the Facility's storm water discharges pursuant to the Storm Water Permit are analyzed for the constituents identified in Table 1 in addition to any other constituents required by the Storm Water Permit. The Defendants shall submit the revised M&RP to Waterkeeper for review and comment as soon as it is completed but in any event no later than thirty (30) days of the Effective Date.  Waterkeeper shall provide comments, if any, to the

1  Defendants within thirty (30) days of receipt of the M&RP.  The Defendants shall

2  incorporate Plaintiff's comments into the M&RP, or shall justify in writing why

3  any comment is not incorporated within thirty (30) days of receiving comments.

4  Any disputes over the adequacy of the revised M&RP shall be resolved pursuant to

5  the dispute resolution provisions of this Consent Decree, set out in Section IV

6  below.

7       **D.     Storm Water Pollution Prevention Plan**

8       25.  <u>SWPPP Revisions.</u>  Within thirty (30) days of the Effective Date of

9  this Consent Decree, Defendants shall revise the SWPPP to identify (1) current

10  BMPs, (2) BMPs developed pursuant to this Consent Decree to control the

11  discharge of pollutants from the Facility, (3) a description of all industrial

12  activities, (4) corresponding potential pollutant sources for industrial activities, and

13  (5) a description of the potential pollutants from each source. The Defendants shall

14  submit the revised SWPPP to Waterkeeper for review and comment as soon as it is

15  completed, but in any event no later than thirty (30) days of the Effective Date.

16  Waterkeeper shall provide comments, if any, to Defendants within thirty (30) days

17  of receipt of the SWPPP. Defendants shall incorporate Plaintiff's comments into

18  the SWPPP, or shall justify in writing why any comment is not incorporated within

19  thirty (30) days of receiving comments. Any disputes as to the adequacy of the

20  revised SWPPP shall be resolved pursuant to the dispute resolution provisions of

21  this Consent Decree, set out in Section IV below.

22       **E.     Employee Training**

23       26.  Within thirty (30) days of the Effective Date, Defendants shall

24  develop a training program, including any training materials, as necessary, for

25  effective implementation of the training program ("Training Program").

26       27.  The Training Program shall ensure (a) that there are a sufficient

27  number of employees delegated to achieve compliance with the Storm Water

28

1   Permit and this Consent Decree, and (b) that these employees are properly trained

2   to perform the required compliance activities. Such Training Program shall be

3   specified in the SWPPP.

4        28.     The Training Program shall require specific training to include at least

5   the following:

6             a.   <u>Non-Storm Water Discharge Training.</u>  The Defendants shall train

7   all employees handling scrap metal at the C & M Facility on the Storm Water

8   Permit's prohibition of non-storm water discharges so that employees know what

9   non-storm water discharges are, how to detect them, and how to prevent them;

10            b.   <u>BMP Training.</u> The Defendants shall train all employees

11  responsible for BMP implementation and maintenance to ensure that BMPs are

12  used effectively to prevent the exposure, discharge, and/or treatment of storm

13  water at the Facility

14            c.   <u>Sampling Training.</u> The Defendants shall train all individuals

15  collecting samples at the Facility pursuant to this Consent Decree or the Storm

16  Water Permit on the proper sampling protocols, including chain of custody

17  requirements, to ensure storm water and/or non-storm water samples are properly

18  collected, stored, and submitted to a certified laboratory;

19            d.   <u>Visual Observation Training.</u> The Defendants shall provide training

20  to all individuals performing visual observations at the Facility pursuant to this

21  Consent Decree and the Storm Water Permit.

22       29.     Training shall be provided by a private consultant or a representative

23  of Defendants familiar with the requirements of this Consent Decree and the Storm

24  Water Permit, and shall be repeated as necessary to ensure that all such employees

25  are familiar with the requirements of this Consent Decree, the Storm Water Permit,

26  and the Facility's SWPPP.  All new staff shall receive this training before

27  assuming responsibilities for implementing the SWPPP or M&RP.

28

30.    The Defendants shall maintain training records to document compliance with this paragraph, and shall provide Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

**F.    Compliance Monitoring and Reporting**

31.    <u>Annual Site Inspections.</u> Up to three Waterkeeper representatives or consultants (including an attorney), may conduct one inspection ("Site Inspection") at the Facility each year that this Consent Decree is in effect.  Site Inspections shall occur during normal business hours and Waterkeeper shall provide Defendants with as much notice as possible, but at least twenty-four (24) hours notice prior to a Site Inspection during wet weather, and seventy-two (72) hours notice prior to a Site Inspection during dry weather. Notice will be provided by telephone and electronic mail.  During the Site Inspection, Defendants shall allow Waterkeeper and/or its representatives access to the Facility's SWPPP, M&RP, monitoring records, and to all monitoring reports and data for the Facility.  During the Site Inspection, Defendants shall allow Waterkeeper and/or its representatives to collect samples of storm water or non-stormwater discharges and samples from any infiltration galleries at the Facility.  Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection pursuant to this paragraph.  If Waterkeeper takes photographs and/or video recording, Waterkeeper shall provide Defendants with the photographs and/or video within fourteen (14) days after any written request by Defendants for such photographs and/or videos.  Waterkeeper agrees that all individuals who will participate in a Site Inspection will execute a waiver and release prior to the Site Inspection.  Waterkeeper also agrees that all individuals who will participate in the Site Inspection will sign a sign-in sheet when they arrive at the Facility.

32.    <u>Waterkeeper's Compliance Monitoring</u>. Defendants agree to compensate Waterkeeper for time to be spent monitoring the Defendants'

compliance with the Consent Decree.  To this end, the Defendants shall pay Waterkeeper the sum of Five Thousand Dollars ($5,000) within fifteen (15) days of the Effective Date.  This payment shall be submitted and made payable to "Los Angeles Waterkeeper," addressed to Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, California 90401, and sent via courier or overnight delivery.

33.    Data Reporting.  During the life of this Consent Decree, the Defendants shall provide Waterkeeper with a copy of all consent decree and Permit compliance and monitoring data, including inspection reports, related to the Facility's coverage under the Storm Water Permit on a monthly basis. The Defendants shall provide Waterkeeper with all laboratory analyses related to sampling at the Facility within fourteen (14) days of the Defendants' receipt of such information.

34.    Document Provision. During the life of this Consent Decree, the Defendants shall copy Waterkeeper on all documents and communications related to water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any State, local agency, county, or municipality.  Such reports and documents shall be provided to Waterkeeper concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to water quality received by the Defendants from any regulatory agency, State or local agency, county, or municipality shall be provided within three (3) business days of receipt by the Defendants.

## G.    Environmental Project, Reimbursement of Litigation Fees and Costs, and Stipulated Penalties

35.    Environmental Project. The Defendants agree to make a payment of Twenty-Five Thousand Dollars ($25,000) within fifteen(15) days of the Effective Date to the Rose Foundation for Communities and the Environment for a project

related to water quality designed to analyze, reduce, prevent, or otherwise mitigate the ecological effects of storm water and/or non-stormwater discharges into Los Angeles area waterbodies.  The payment shall be mailed via certified mail or overnight delivery to the attention of Tim Little, Rose Foundation for Communities and the Environment, 6008 College Avenue Suite 10, Oakland, California 94618-1382.  Defendants shall provide Waterkeeper with a copy of such payment.

36.    <u>Reimbursement of Plaintiffs' Fees and Costs</u>. The Defendants agree to partially reimburse Plaintiff for its investigation fees and costs, consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter in an amount totaling Sixty Thousand Dollars ($60,000).  The Sixty Thousand Dollars shall be paid in three payments of $20,000 on June 30, 2013, September 30, 2013, and December 31, 2013.  All such payments shall be made payable to Los Angeles Waterkeeper and delivered by certified mail or overnight delivery to:

Elizabeth Crosson

120 Broadway, Suite 105

Santa Monica, CA 90401

37.    <u>Stipulated Payment</u>. The Defendants shall make a remediation payment of Six Hundred Dollars ($600) for each missed deadline included in this Consent Decree.  Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by the Defendants' alleged discharges and shall be awarded to the Rose Foundation for Communities and the Environment, and mailed via certified mail or overnight delivery to the attention of Tim Little, Rose Foundation for Communities and the Environment, 6008 College Avenue Suite 10, Oakland, California 94618-1382. The Defendants agree to make the stipulated payment within thirty (30) days of a missed deadline and make the payment via overnight delivery or by certified mail. The Defendants

shall provide Waterkeeper with a copy of each such payment at the time it is made.

**H.    Agency Review of Consent Decree**

38.    Plaintiff shall submit this Consent Decree to the Federal Agencies, within three (3) days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendants.  In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

**IV.   DISPUTE RESOLUTION**

39.    This Court shall retain jurisdiction over this matter for the purposes of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

40.    <u>Meet and Confer</u>.  A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the party's proposal to resolve the dispute under this Section.  The Parties shall then meet and confer in an attempt to resolve the dispute no later than fourteen (14) calendar days from the date of the notice.

41.    If the Parties cannot resolve the dispute within 14 days after the meet and confer described in Paragraph 40, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California.  The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

42.    If Waterkeeper initiates a motion or proceeding before the Court to enforce the terms and conditions of this Consent Decree, Waterkeeper shall be

1  entitled to recover reasonable fees and costs incurred to enforce the terms of this

2  Consent Decree consistent with the provisions of Sections 505 and 309 of the

3  CWA, 33 U.S.C. §§ 1365, 1319.

4  **V.     MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO**

5  **SUE**

6      43.    In consideration of the above, upon the Effective Date of this Consent

7  Decree, the Parties hereby fully release, except for claims for  Defendants' failure

8  to comply with this Consent Decree and as expressly provided below, each other

9  and their respective successors, assigns, officers, agents, employees, and all

10  persons, firms and corporations having an interest in them, from any and all

11  alleged CWA violations claimed in the Complaint, up to and including the

12  Effective Date of this Consent Decree.

13      44.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's

14  right to address or take any position that it deems necessary or appropriate in any

15  formal or informal proceeding before the Regional Board, EPA, or any other

16  judicial or administrative body on any other matter relating to Defendants.

17      45.    Neither the Consent Decree nor any payment pursuant to the Consent

18  Decree shall constitute or be construed as a finding, adjudication, or

19  acknowledgement of any fact, law or liability, nor shall it be construed as an

20  admission of violation of any law, rule, or regulation. The Defendants maintain and

21  reserve all defenses they may have to any alleged violations that may be raised in

22  the future.

23      46.    Force Majeure. The Defendants shall notify Waterkeeper pursuant to

24  the terms of this paragraph, when timely implementation of the requirements set

25  forth in this Consent Decree becomes impossible, despite the timely good-faith

26  efforts of the Defendants, due to circumstances beyond the reasonable control of

27  the Defendants or their agents, and which could not have been reasonably foreseen

28

and prevented by the exercise of due diligence by the Defendants.  Any delays due to Defendants' failure to make timely and bona fide applications and to exercise diligent efforts to obtain necessary permits, or due to normal inclement weather, shall not, in any event, be considered to be circumstances beyond Defendants' control.  In no circumstances shall a claim of inability to pay be considered Force Majeure.

a. If the Defendants claim impossibility, they shall notify Waterkeeper in writing within twenty-one (21) days of the date that the Defendants first knew of the event or circumstance that caused or would cause a violation of this Consent Decree.  The notice shall describe the reason for the nonperformance and specifically refer to this Section.  It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by the Defendants to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. The Defendants shall adopt all reasonable measures to avoid and minimize such delays.

b. The Parties shall meet and confer in good-faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of the Defendants, due to circumstances beyond the control of Defendants that could not have been reasonably foreseen and prevented by the exercise of due diligence by the Defendants, new deadlines shall be established.

c. If Waterkeeper disagrees with the Defendants' notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section IV.  In such proceeding, the Defendants shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of

any delay attributable to such circumstances.

## VI.    MISCELLANEOUS PROVISIONS

47.    <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

48.    <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

49.    <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.    <u>Correspondence</u>.  All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by regular mail or electronic mail as follows:

If to Plaintiff:

Tatiana Gaur
Staff Attorney
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, CA 90401
tgaur@lawaterkeeper.org

With copies to:
Elizabeth Crosson
Executive Director
Los Angeles Waterkeeper
liz@lawaterkeeper.org

If to Defendants:

William W. Funderburk, Jr.
Anna L. Le May

Castellón & Funderburk LLP
811 Wilshire Boulevard, Suite 1025
Los Angeles, CA  90017
wfunderburk@candffirm.com
alemay@candffirm.com

With copies to:

Don Monroe
C & M Metals Inc.
1709 East 24th Street
Los Angeles, CA 90058
cmmetals@gmail.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

51.  <u>Effect of Consent Decree</u>.  Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendants' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation.  Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

52.  <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

53.  <u>Modification of the Consent Decree</u>.  This Consent Decree, and any

provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

54.   <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

55.   <u>Integration Clause</u>.  This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

56.   <u>Authority</u>.  The undersigned representatives for Plaintiff and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

57.   The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

58.   The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, the Defendants do not admit liability for any purpose as to any allegation or matter arising out of this Action.

**IT IS SO ORDERED:**

Date: May 21, 2013

Honorable Dean D. Pregerson
UNITED STATES DISTRICT JUDGE
CENTRAL DISTRICT OF CALIFORNIA